IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WISCONSIN LABORERS HEALTH FUND,
WISCONSIN LABORERS PENSION FUND,
WISCONSIN LABORERS APPRENTICE
AND TRAINING FUND, BUILDING & PUBLIC
WORKS LABORERS VACATION FUND,
JOHN J. SCHMITT, in his capacity as Trustee,
WISCONSIN LABORERS DISTRICT COUNCIL,
and WISCONSIN LABORERS - EMPLOYERS
COOPERATION AND EDUCATION TRUST FUND,

                               Plaintiffs,                       OPINION AND ORDER

    v.

                                                                   21-cv-556-wmc

GROUND EFFECTS OF WISCONSIN, INC.,

                               Defendant.

---

Upon signing a collective bargaining agreement, an employer generally becomes obligated to contribute to union funds. Here, a union, its funds and its trustee claim that defendant Ground Effects of Wisconsin, Inc., failed to make the contributions due under their collective bargaining agreement and seek payment, along with liquidated damages and interest. The question in this case is whether the agreement requires Ground Effects to contribute for *all* hours worked by its employees since the vast majority of the contributions now claimed by plaintiffs are for hours employees worked on projects *not* covered by the agreement.

As explained in past orders, specifically before this court is plaintiffs' motion for default judgment as a result of defendant Ground Effects' failure to defend timely, which it subsequently explained was due in part by its purported confusion over the actual

amount being sought.  (Dkt. #8.)  Having required additional briefing by the parties on this issue and following a postponed default judgment hearing on February 25, 2022, the court now concludes that the collective bargaining agreement at issue only required contributions to the various union funds based on hours worked on projects "supervised or let by" the Wisconsin Department of Transportation ("DOT").  Accordingly, plaintiffs are entitled to an award of $8,925.35, rather than the more than $350,000 sought for all hours worked on all projects, and the court will direct entry of default judgment in that amount.

## BACKGROUND

The collective bargaining agreement at issue is the Heavy and Highway Construction Agreement.  (Dahl Aff., Ex. 2 (dkt. #10-2).)  Article I of that Agreement, titled "Coverage," states:

> This agreement shall cover all highway and heavy construction work included in contracts awarded by the State of Wisconsin Department of Transportation, all work performed for any authority supervised by said Department of Transportation, airport work (exclusive of buildings).

(*Id.* at 4.)  Article XI sets wage rates and fringe benefit rates by classifications and by areas. (*Id.* at 16-23.)  Articles XII through XVI address obligations to pay dues and contributions to funds for health and welfare, pension, apprenticeship and training, and the Laborers-Employers Cooperation and Education Trust ("LECET") on "all hours worked," with some variations in language across the various provisions.  (*Id.* at 24-29.)

In their original motion for default judgment, plaintiffs sought an award of $352,396.66, representing $213,941.21 in contributions, $42,601.62, in liquidated

damages, $93,411.13 in interest, $1,926.00 in attorneys' fees and $487.00 in costs of prosecution. (Proposed Order (dkt. #8-1).) After entry of default by the clerk's office, the defendant was allowed to enter an appearance and oppose the entry of the full amount of default judgment sought by plaintiffs on the basis that the award of most of that sum depended upon a misinterpretation of the parties' agreement. As part of subsequent briefing on this issue, the court also asked plaintiffs to break out the damages "sought based on amounts due for hours its employees actually spent on DOT projects and additional amount due under a theory that defendant is liable for hours its employees spent on non-DOT projects." (2/3/22 Order (dkt. #32) 3.)

In response, plaintiffs represent that for the period from August 1, 2015, through July 31, 2021, defendant owes $9,397.36 for hours worked by Ground Effects employees on projects let or supervised by the DOT, plus liquidated damages and interest, with the remainder of the claimed award being for hours worked on non-DOT projects.[1] (Pls.' Suppl. Br. (dkt. #34) 1.) In their supplemental briefing, plaintiffs further concede that contributions are not owed to the Training Fund for non-DOT work and agreed to deduct $5,783.79 from their claim. (*Id.*) Plaintiffs also acknowledge that defendant "Ground Effects has raised a bona fide dispute of damages as to whether it was legally permitted to check off and remit dues to the Wisconsin Laborers District Council," effectively conceding that any default judgment should also be reduced to $8,925.35 for DOT work and to $335,154.80 for non-DOT work. (*Id.*)

---

[1] Plaintiffs do not explain the difference between the $355,217.10 now sought and the $352,396.66 figure provided in their original motion, but this presumably reflects additional interest due on the original amount owed.

3

OPINION

As described above, the amount of plaintiffs' default judgment largely turns on their theory that defendant Ground Effects owes dues and contributions for all hours worked by employees, including time spent working on non-DOT projects. In *Wisconsin Laborers Health Fund v. Bob Ewers Contracting, LLC*, No. 16-CV-611-JDP, 2018 WL 4005736 (W.D. Wis. Aug. 22, 2018), this court considered whether the same agreement at issue here required contributions to fringe benefit funds for hours employees worked on municipal sewer and water work. In concluding that it did not, the court relied on the coverage provision under Article I, limiting the agreement -- and thus, the obligations under the agreement -- to DOT "supervised or let" projects. *Id.* at *2. Based on this provision, the court concluded that municipal sewer and water work, even that performed "adjacent to a road," did not fall within the scope of the coverage provision and, therefore, defendant was not obligated to make contributions based on hours its employees worked on those projects. *Id.*

In an effort to avoid the same result as *Bob Ewers*, plaintiffs make several arguments. First, they claim to have "stipulated" in that case that their recovery against the defendant would be limited to "hours worked on covered projects only." (Pls.' Suppl. Br. (dkt. #34) 6.) This is neither a correct statement of the position that plaintiffs took in their post-bench trial briefing in *Bob Ewers* -- a number of whom are also plaintiffs in this case *and* still represented by the same counsel – nor an accurate reading of Judge Peterson's ultimate decision. Instead, the plaintiffs in *Bob Ewers* expressly argued that "Article IV of the Heavy & Highway Agreement defines its work jurisdiction coverage; and makes clear that the

4

coverage is not limited to contracts let by, or under the supervision of the Wisconsin DOT." (Finerty Decl., Ex. A (dkt. #40) 6-7.) In making the same argument here, plaintiffs again seek to extend the employer's obligation under the agreement to pay dues and make contributions to union funds beyond their covered work.[2]

Second, plaintiffs argue that the court's *Bob Ewers* decision, even if not distinguishable, is not "binding," and thus, does not *preclude* a finding in their favor in this case. Fair enough, but this court's review of the same agreement, and virtually the same issue and parties, is nonetheless *persuasive* authority.

Third, plaintiffs cite cases in which courts concluded that "[a] collective bargaining agreement *can* require employers to remit contributions for all hours worked by covered employees, rather than only for hours of covered work performed by its covered employees." (Pls.' Suppl. Br. (dkt. #34) 6 (emphasis added) (citing *McCleskey v. KLP Const. Co.*, 689 F.3d 677, 680 (7th Cir. 2012)).) While the Seventh Circuit in *McCleskey* concluded that the CBA at issue in that case required payment for all hours worked by covered employees, it did so by rejecting the defendant employer's argument that a provision setting forth the union's trade activities for purposes of resolving inter-union disputes limited fringe benefit contributions to only hours worked on covered projects. 689 F.3d at 680. Moreover, the provision limiting the CBA to work "supervised or let" by the DOT is *not* a provision dealing with this union's jurisdiction, but instead is an

---

[2] During oral argument, plaintiffs' legal counsel went further, attempting to distinguish *Bob Ewers* based on the fact that those plaintiffs were merely seeking "dues" while these plaintiffs are seeking "contributions." This bit of sophistry is also contradicted by the *Bob Ewers* opinion, which expressly considered and rejected a claim for contributions.

5

overarching provision describing the scope of the work currently covered by the collective bargaining agreement. See *NECA-IBEW Welfare Tr. Fund v. Ernie's Elec. Co.*, No. 10-CV-2046, 2012 WL 5604023, at *15 (C.D. Ill. Nov. 15, 2012) (distinguish *McCleskey* because the definition of "work" in the collective bargaining agreement before it was limited to covered projects and concluding that employer contributions were only owed on bargaining unit work). Relying on the coverage provision, the language requiring contributions to the various funds for "all hours worked," and the *Bob Ewers* and *Ernie's Electric* decisions, therefore, this court again concludes that "work" as defined in the parties' agreement is limited to the work that is supervised or led by the Wisconsin DOT and does not cover hours employees spent on non-DOT projects, as plaintiffs contend.

In fairness, plaintiffs also argue that an "ambiguity remains" as to whether the fringe benefit provisions cover all hours worked by employees, including work on non-DOT projects, requiring the court to look to extrinsic evidence to resolve that ambiguity. (Pls.' Suppl. Br. (dkt. #34) 9.) Even if the court were inclined to look to extrinsic evidence, however, plaintiffs merely point to two, conclusory statements by union employees as evidence that some other employers pay dues and contributions based on the same set of hours. (Pls.' Suppl. Br. (dkt. #32) 15 (citing Schmitt Decl. (dkt. #36) ¶ 10; Suber Decl. (dkt. #35) ¶¶ 5-6).) This purported "industry practice" is *not* sufficient for this court to find that employers are consistently paying dues and making contributions for employee hours worked on projects outside that covered by the agreements, without supporting, underlying documentation of the actual practice, particularly for small employers doing largely non-covered work. In contrast, Wisconsin courts have found "highly probative" of

6

the intended meaning of a contract to be evidence of the parties' practical construction of an ambiguous provision. *See Zweck v. D. P. Way Corp.*, 70 Wis. 2d 426, 435, 234 N.W.2d 921, 926 (1975).

Here, the fact is that these plaintiffs have *not* required contributions to be paid by *this* defendant for hours worked on non-DOT projects under all earlier audits. (Def.'s Suppl. Br. (dkt. #37) 1; Boelter Decl. (dkt. #39) ¶¶ 4-7.)[3] While plaintiffs now attribute this to an error by the auditor assigned to review defendant's fund contributions, this is still better evidence of the agreement between *these* parties, even if not for the meaning of any arguable ambiguity in the contribution obligations under the collective bargaining agreement for employers more generally. Regardless, the court is not prepared to interpret the agreement differentially from the parties' own practice without having: the benefit of the history of negotiations between the union and the employer group as to the obligation to pay for all work, especially if a small percentage involves covered DOT projects; proof of the actual industry practice under this agreement, as opposed to self-serving, conclusory statements from two union representatives; and the actual breakdown of DOT and non-DOT work and contributions of smaller employers like the defendant. Otherwise, this court has no basis to find that at least smaller employers must count more than hours

---

[3] The court also is not persuaded by plaintiffs' arguments that limiting the agreement to covered work would render certain provisions non-sensical (*e.g.*, the provision prohibiting work on Labor Day). (Pls.' Suppl. Br. (dkt. #34) 10-11.) Not only is this a stretch as evidence of a real conflict (contractors have required workers to work on holidays when behind on deadlines as anyone caught in traffic jams at those times is aware), but clear and unambiguous language defining the scope of the provision in Article I limiting the agreement to DOT let or supervised work still undercuts this argument.

worked on DOT let or supervised projects in remitting dues and contributing to union funds, much less are contractually bound to count all hours worked on any project.

Regardless, based on the seemingly unambiguous language of the collective bargaining agreement *and* the actual practice of the parties in suit, the court finds that plaintiffs' total default judgment is properly limited to $8,925.35, representing contributions, liquidated damages and interest owed on defendant's employees' hours worked on DOT supervised or let projects only.[4]

## ORDER

IT IS ORDERD AND ADJUDGED that:

1) Plaintiffs' motion for default judgment (dkt. #8) is GRANTED IN PART AND DENIED IN PART.

2) Default judgment is award to plaintiffs against defendant in the amount of $8,925.35.

3) The clerk's office is directed to enter final judgment in plaintiffs' favor in this amount.

Entered this 7th day of March, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[4] During the default judgment hearing, the parties seemed in agreement that defendant already paid this amount. If so, absent an award of attorneys' fees and costs, plaintiffs should provide defendant with an appropriate satisfaction of judgment.